# 24-1407-cv

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————

MARIA ELENA SWETT URQUIETA,

*Petitioner-Appellant,*

v.

JOHN FRANCIS BOWE,

*Respondent-Appellee.*

————————

*On Appeal from the United States District Court*
*For the Southern District of New York*

## BRIEF FOR RESPONDENT-APPELLEE

MORVILLO ABRAMOWITZ GRAND IASON
& ANELLO P.C.
565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
TEL: (212) 856-9600

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT.........................................................................1

STATEMENT OF THE ISSUES ....................................................................3

STATEMENT OF THE CASE.........................................................................3

    A.    S.B.S. and Life Prior to 2022......................................................3

    B.    ██████████████████ ........................................................4

    C.    S.B.S.'s Trip to New York in December 2022 .........................6

        1.    Travel Authorization ...........................................................6

        2.    S.B.S. Does Not Return to Chile on January 8, 2023 ............7

    D.   New York Family Court Case .....................................................8

    E.   S.B.S.'s Life In New York..........................................................9

PROCEDURAL HISTORY ...........................................................................11

STANDARD OF REVIEW ...........................................................................13

ARGUMENT ................................................................................................13

    I.   S.B.S.'s MATURITY AND OBJECTION TO RETURN ARE AMPLY SUPPORTED BY THE RECORD ..............................................14

        a.    The Article 13 Maturity and Objection Defense .................14

        b.    S.B.S.'s Maturity and Objection.........................................16

        c.    The District Court Correctly Rejected Ms. Swett's "Parental Alienation" Theory..........................................................21

        d.    Ms. Swett's Attempt to Create a Question of Law Fails....................23

    II.   THE PETITION WAS FILED MORE THAN ONE YEAR AFTER THE DATE OF RETENTION AND THE DISTRICT COURT CORRECTLY FOUND THAT S.B.S. IS WELL-SETTLED ......................25

    A. The Article 12 One-Year and Settled Defense ............................25

    B. The District Court Correctly Found The Date Of Wrongful Retention To Be January 8, 2023 ..................................................26

    C. The District Court Correctly Found That S.B.S. is Settled in New York ....31

i

III. THE DISTRICT COURT'S REFUSAL TO RETURN S.B.S. TO
CHILE WAS NOT AN ABUSE OF DISCRETION ....................................34

CONCLUSION ........................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adamis v. Lampropoulou*,
   659 Fed. App'x 11 (2d Cir. 2016) ................................................................. Passim

*Alcala v. Hernandez*,
   826 F.3d 161 (4th Cir. 2016) ................................................................. 32

*Avendano v. Balza*,
   442 F. Supp. 3d 417 (D. Mass. 2020) .................................................... 17

*Banque Arabe et International D'Investissement v. Bulk Oil (USA) Inc.*,
   726 F. Supp. 1411 (S.D.N.Y. 1989) ....................................................... 30

*Baxter v. Baxter*,
   423 F.3d 363 (3rd Cir. 2005) ................................................................. 28

*Blondin v. Dubois*,
   78 F. Supp. 2d 283 (S.D.N.Y. 2000) ...................................................... 35

*Blondin v. Dubois*,
   189 F.3d 240 (2d Cir. 1999) .............................................................. 15, 35

*Blondin v. Dubois*,
   238 F.3d 153 (2d Cir. 2001) .............................................................. 13, 15

*Castillo v. Castillo*,
   597 F. Supp. 2d 432 (D. Del. 2009) ....................................................... 20

*Custodio v. Samillan*,
   842 F.3d 1084 (8th Cir. 2016) ................................................ 16, 20, 24, 37

*da Costa v. de Lima*,
   94 F.4th 174 (1st Cir. 2024) ................................................................. 36

*da Silva v. da Aredes*,
   953 F.3d 67 (1st Cir. 2020) ......................................................... 32, 33, 34

*de Silva v. Pitts*,
481 F.3d 1279 (10th Cir. 2007) ............................................................ 15

*Diaz-Alarcon v. Flandez-Marcel*,
944 F.3d 303 (1st Cir. 2019)................................................................ 23

*Falk v. Sinclair*,
692 F. Supp. 2d 147 (D. Me. 2010)...................................................... 31

*Gitter v. Gitter*,
396 F.3d 124 (2d Cir. 2005) ................................................................ 13

*Golan v. Saada*,
596 U.S. 666 (2022) ................................................................ 13, 24, 36

*Haimdas v. Haimdas*,
720 F. Supp. 2d 183 (E.D.N.Y. 2010) ............................................ 15, 19

*Hazbun Escaf v. Rodriquez*,
200 F.Supp.2d 603 (E.D. Va. 2002) .................................................... 19

*Hernandez v. Cardoso*,
844 F.3d 692 (7th Cir. 2016) .............................................................. 16

*Hirst v. Tiberghien*,
947 F. Supp. 2d 578 (D.S.C. 2013) ..................................................... 19

*In re D.A.*,
2015 WL 2344079 (E.D.N.Y. May 14, 2015) ................................. 19, 20

*In re D.T.J.*,
956 F. Supp. 2d (S.D.N.Y. 2013)......................................................... 21

*Lomanto v. Aduke Agblusi*,
2024 WL 3342415 (2d Cir. July 9, 2024) ............................... 23, 24, 35

*Lomanto v. Agblusi*,
2023 WL 4118124 (S.D.N.Y. June 22, 2023) ................... 24, 25, 28, 36

*Lozano v. Alvarez*,
697 F.3d 41 (2d Cir. 2012) ....................................... 25, 26, 32

iv

*Marks v. Hochhauser*,
876 F.3d 416 (2d Cir. 2017) ................................................................. 25, 29, 30

*Matovski v. Matovski*,
2007 WL 2600862 (S.D.N.Y. Aug. 31, 2007) ....................................... 20

*Norinder v. Fuentes*,
657 F.3d 526 (7th Cir. 2011) ................................................................. 13

*Ortega v. Duncan*,
333 F.3d 102 (2d Cir. 2003) ................................................................. 16

*Poretti v. Baez*,
2019 WL 5587151 (E.D.N.Y. Oct. 30, 2019) ....................................... 21, 31

*Souratgar v. Lee*,
720 F.3d 96 (2d Cir. 2013) ................................................................... 13

*Tann v. Bennett*,
648 Fed. App'x 146 (2d Cir. 2016) ........................................................ 17

*Taveras v. Morales*,
22 F. Supp. 3d 219 (S.D.N.Y. 2014) ..................................................... 25

*Tereshchenko v. Karimi*,
102 F.4th 111 (2d Cir. 2024) ................................................................. 30

*Trott v. Trott*,
202 WL 492336 (E.D.N.Y. 2020) ......................................................... 30

*United States v. De La Cruz*,
902 F.2d 121 (1st Cir. 1990) ................................................................. 37

*Valenzuela v. Michel*,
736 F.3d 1173 (9th Cir. 2013) ............................................................... 16

## Other Authorities

Nov. 13, 2019 Tr. at 47:12–18, *da Silva v. da Aredes*,
No. 18-CV-12353 (D. Mass.) ................................................................. 34

v

Nov. 6, 2019 Tr. at 11:18–12:6 *da Silva v. da Aredes*,
 No. 18-CV-12353 (D. Mass.) ................................................................ 34

## PRELIMINARY STATEMENT

This appeal is a transparent attempt by the losing party (Petitioner-Appellant Maria Swett Urquieta ("Ms. Swett")) to relitigate the facts, mischaracterize the evidence, and manufacture a legal issue to turn back the factfinder's carefully reasoned determination.  The district court (Engelmayer, J.) conducted a two-week trial, heard the testimony of 17 witnesses, and issued a 102-page opinion with detailed factual findings supporting the denial of Ms. Swett's petition for return under the Hague Convention on the Civil Aspects of Child Abduction ("Hauge Convention" or "the Convention").  The extensive evidentiary record and the district court's thorough analysis make clear that Ms. Swett's appeal has no merit.

Indeed, Respondent-Appellee Mr. Bowe proved by a preponderance of the evidence two affirmative defenses under the Convention, each of which independently justify denial of the petition for return:  (1) S.B.S. is of an age and maturity where his views should be considered, and he strongly objects to return, and (2) the petition was filed over a year after the date of wrongful retention and S.B.S. is well-settled in the United States.  Both of the affirmative defenses turn on factual findings that have ample support in the record and are entitled to significant deference because the district court is best situated to evaluate the evidence and make credibility determinations.  *See, e.g.*, *Adamis v. Lampropoulou*, 659 F. App'x 11, 12

1

(2d Cir. 2016). This is particularly true here because the district court was able to question S.B.S. directly to assess his maturity, opinions, experiences, and credibility.

There is no reasonable dispute that S.B.S. is mature, precocious, and highly intelligent, or that ████████████████████████████████████ ████████████████████████████████. There is ample documentary evidence and witness testimony supporting the district court's finding that S.B.S. consistently, genuinely, and strenuously objected to living in Chile, in part because of his isolation, a chaotic school environment, and his mother's refusal to acknowledge or address his needs. There is also ample evidence supporting the district court's finding that Ms. Swett did not authorize S.B.S. to stay in the United States past January 8, 2023. Indeed, she filed a police report in Chile on January 10 when he did not return on January 8—a significant piece of evidence that Ms. Swett fails to mention in her brief. Because the petition was filed more than one year after January 8, 2023, the district court was required to consider whether S.B.S. was settled in the United States. Here, again, there can be no reasonable dispute that S.B.S. has a stable life in New York: a stable home with an attentive parent, many friends and family, supportive teachers, extracurricular activities, and community.

Ms. Swett has not identified any clear error or mistake of law. Repetition and selective citations to evidence do not make Ms. Swett's view of the facts or her theories of the case any more valid. The district court correctly rejected these

2

arguments and assertions below in denying the petition. This Court should defer to and affirm the conscientious factfinder in this case.

## STATEMENT OF THE ISSUES

1. Whether this Court should defer to the district court's finding that S.B.S. is of a sufficient age and maturity for his views to be taken into account, and that he genuinely objects to return to Chile.

2. Whether this Court should defer to the district court's finding that the date of wrongful retention was January 8, 2023, and that S.B.S. is well-settled in the United States.

3. Whether the district court acted within its discretion in denying the petition for return after finding that two affirmative defenses provided by the Hague Convention had been satisfied.

## STATEMENT OF THE CASE

### A. S.B.S. and Life Prior to 2022

S.B.S. is the twelve-year-old son of John Bowe ("Mr. Bowe"), a writer and presentation coach, and Maria Swett Urquieta ("Ms. Swett"), a Chilean television actress. SPA1–2. S.B.S. was born in Minnesota in June 2012 and has dual citizenship in the United States and Chile. SPA8–10. Pursuant to a 2013 Minnesota custody agreement and order, the parents shared joint legal custody "to cooperatively make major decisions on behalf of S.B.S. with respect to education, health, and

spirituality." SPA10; JA2438. Until a New York family court order in mid-2023, Ms. Swett had primary physical custody while Mr. Bowe had at least 90 days of unrestricted parenting time per year. JA2443–JA2444.

From 2013 to early 2022, the parents maintained a cordial and cooperative relationship. Mr. Bowe would typically visit S.B.S. in Chile several times during the school year for a few weeks at a time, and S.B.S. would stay with Mr. Bowe in New York for two to three months between December and March (during Chilean summer vacation). SPA11. Each time that Mr. Bowe left Chile with S.B.S., he was required to obtain a written, notarized, authorization from Ms. Swett setting forth the dates of travel. JA2444; SPA11.

S.B.S. also communicated nearly every day with his father by video. JA108.

**B.** ████████████████████████████████

S.B.S. regularly complained about his life in Chile, including long periods of isolation at home, lack of social or group activities, constant changes in nannies—Ms. Swett admitted 20 in total, and lack of attention from his mother who was often working or sleeping, and unable or unwilling to tend to her son's needs. SPA13 & n.6.

Beginning around June 2022, S.B.S.'s complaints intensified, and his ███████████████████████████████████████████████ SPA13; SPA15. He became ████████████████████████ that his mother did not

4

prioritize his needs, that the refrigerator and pantry were locked in the house to prevent Ms. Swett from eating, and that his school life was "chaotic" including kids acting out and disrupting class. SPA14; JA3046.  S.B.S. ████████████████ ████████████████  SPA12–20.

████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████████

Mr. Bowe, in contrast, ██████████████████████████ ████████████████████████. He spoke to S.B.S. more frequently to provide ████████ support.  SPA20; SPA15.  Mr. Bowe also increased his visits to Chile in the latter half of 2022.  SPA21.  In September 2022, Mr. Bowe attempted to address ████████████████with Ms. Swett, and ████████████████████ ████████████  SPA19.  Ms. Swett claimed that she knew about ████████████ ████████████ but insisted that she would handle the situation.  SPA17.  However, she did not ████████████████████████████████ that Mr. Bowe arranged while he was visiting in December 2022. JA228.  Both Ms. Swett's expert and S.B.S.'s ████████████ in New York testified

5

that Ms. Swett's lack of response to S.B.S.'s ███████████ was "neglectful" and "negligent" respectively.  SPA25.

### C.    S.B.S.'s Trip to New York in December 2022

#### 1.    Travel Authorization

Plans for S.B.S.'s annual trip to New York over his winter break were in flux in the fall of 2022 due to disagreements between Mr. Bowe and Ms. Swett, S.B.S.'s increasing frustration with Ms. Swett, and Ms. Swett's belief that Mr. Bowe was the cause of S.B.S.'s ██████████.  SPA28–29, JA167–JA168, JA685–JA686, JA2615–JA2620, JA2994–JA2997.  Ultimately, Ms. Swett signed a notarized travel authorization allowing S.B.S. to leave Chile with Mr. Bowe on December 24, 2022, with a return date of January 8, 2023.  SPA29; JA2492.

In early January 2022, Mr. Bowe asked Ms. Swett to allow S.B.S. to stay in New York through February because Mr. Bowe believed their son needed a real break.  SPA29–30.  Ms. Swett declined the request and demanded that S.B.S. be returned on January 8 as planned.  SPA30.  Ms. Swett stated that her decision was "final" and reminded Mr. Bowe that he knew the authorization had a return date of January 8.  SPA30.  The following day, January 6, Ms. Swett continued to insist on a January 8 return.  SPA31.

## 2. S.B.S. Does Not Return to Chile on January 8, 2023

Even though Ms. Swett rejected the request to let S.B.S. stay in New York longer, Mr. Bowe did not return S.B.S. on January 8, 2023. SPA31–32. Mr. Bowe and Ms. Swett had a videoconference on January 8 during which Ms. Swett "beg[ged] him to bring S.B.S. back." SPA32. Mr. Bowe did not commit to returning S.B.S. on a date certain and ended the call by telling Ms. Swett that he "need[ed] to think." SPA32.

On January 10, Ms. Swett filed a police report in Chile stating that S.B.S. had not been returned. SPA33; JA2513–JA2518. She continued to have regular, near-daily communications with S.B.S. by video, in which S.B.S. consistently told her that he did not want to return to Chile, that ████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ SPA36. At trial, Ms. Swett admitted that she believed him when S.B.S. told her these things. JA660.

On February 23, Mr. Bowe and Ms. Swett participated in a mediation during which Mr. Bowe made it clear that S.B.S. would be staying New York indefinitely. SPA35. Later that day, Ms. Swett emailed Mr. Bowe: "You took [S.B.S.] on December 23, 2022, knowing that you were required to deliver him to me on January 8, 2023, and you DIDN'T do it." SPA35; JA2664. In that same email she told Mr. Bowe that she had "no more answers to give [S.B.S.] to keep covering" for Mr.

7

Bowe: "Son, the only reason why I can't support you or help you with what you're asking me for is because you've been kidnapped." JA2664.

Mr. Bowe explained to Ms. Swett that S.B.S. wanted to go to school in New York and improve his mind and his physical condition, and that he would be seeking custody of S.B.S. in a New York court so that he could make arrangements for therapy and school enrollment. SPA36. Mr. Bowe also assured Ms. Swett that she was welcome to come visit S.B.S. any time, that he wanted her to maintain contact with S.B.S., and that the two of them should try to work out an agreement so as not to spend all of their money on lawyers and court cases—money that would be better spent on their son. SPA37 n.11; JA2672.

Ms. Swett continued to have regular video contact with S.B.S., and knew exactly where he was living in New York, but she did not come to visit him in person. JA748. According to her own testimony, Ms. Swett never consented to allow S.B.S to stay past January 8, 2023, and she believed Mr. Bowe was acting illegally. SPA32.

### D. New York Family Court Case

On March 17, 2023, Mr. Bowe filed for emergency custody in Manhattan, seeking to modify the Minnesota custody order because "return to Chile would subject [S.B.S.] to ███████████████████████████████████████ ███████████████████████████████████████ SPA38. Mr. Bowe

requested the right "to make education and medical decisions for [S.B.S.] including the right to enroll him in school in New York City and therapy." SPA38.

In addition to having been told by Mr. Bowe that he was taking this action, Ms. Swett received notice of the petition and of the court proceedings from Mr. Bowe's attorney. SPA38. Indeed, on March 20, April 10, and June 8, 2023, Mr. Bowe's attorney emailed Ms. Swett regarding the petition and hearings. SPA38 n.12–14. Ms. Swett also was personally served with the Petition on April 11. SPA38 n.13. She was informed that she could appear by video. JA3146.

Despite these notices, Ms. Swett never appeared in the family court proceeding. Mr. Bowe was given temporary custody on April 11, 2023, and full custody by default on June 9, 2023. SPA38.

### E.    S.B.S.'s Life In New York

S.B.S. has been enrolled in ▆▆▆▆ since April 2023 and began seeing a therapist (Dr. Ilana Attie) that same month. He had 13 sessions with Dr. Attie between April 20, 2023, and October 16, 2023. SPA38–39, JA2362–JA2375.

S.B.S.'s experience with ▆▆▆▆ was overwhelmingly positive. SPA40. He adjusted quickly and improved significantly in almost all school subjects, and he was enthusiastic about his studies. SPA40. His teacher, Ms. Trauman, described S.B.S. as "precocious," "bright," "driven," and "responsible." SPA76. "He has taken advantage of opportunities to grow intellectually in school" and he is

"motivated to learn and actively challenges himself." SPA74. Indeed, in a "relatively short time period, he has made meaningful academic progress—rapidly improving his grades, perfecting his English, and discovering interests in art, drawing, and sports." SPA74. He also "is coming into his own socially, within a 'large and interesting friend group.'" SPA74. S.B.S. demonstrated leadership and maturity in the classroom, including in an incident where he stood up for a friend who was the target of inappropriate comments, and reported the situation to a teacher. JA393–JA396.

S.B.S. has been admitted to the ████████ for sixth grade and also plans on taking the test for ████████████████. SPA40, SPA80. Ms. Trauman testified that S.B.S. works hard to study outside of school hours for the state exams that will factor into ██████admission decision. SPA80.

When S.B.S. is not in school, he "regularly spends time with family in the United States," SPA76, and "is engaged by his friends [and] extracurricular activities." SPA74–75. S.B.S. lives with his father in the ██████████, and "[a]lthough small, the apartment is a stable and permanent living environment for S.B.S." SPA78. S.B.S. does his homework at a desk that he shares with Mr. Bowe, he helps his father prepare meals, and he spends time watching movies, reading, drawing, and playing videogames. SPA78. ██████████ is across the street from the apartment, and S.B.S. regularly plays there with friends, rides bikes, and skates

with Mr. Bowe. SPA78. S.B.S. testified that he feels that he's "part of a community" in New York. SPA82.

## PROCEDURAL HISTORY

Ms. Swett filed her Petition for return on February 23, 2024—one year and 46 days *after* S.B.S. was supposed to return to Chile (on January 8, 2023) per Ms. Swett's notarized travel authorization. SPA2.

In response to the Petition, Mr. Bowe raised three defenses: (1) S.B.S. objected to return to Chile and is of a sufficient age and maturity for his views to be taken into account; (2) the petition was filed more than one year after the date of wrongful retention and S.B.S. is well-settled in the United States; and (3) return to Chile would expose S.B.S. to a grave risk of physical or psychological harm. SPA3.

After two months of expedited discovery, the district court held a two-week bench trial from April 8-19, 2024, during which 17 witnesses testified, including both parents, S.B.S., grandparents, relatives, close family friends, schoolteachers, his school counselor, his therapist, and an expert called by Ms. Swett. JA67–JA1450. On May 7, 2024, the district court issued a 102-page decision, summarizing and weighing the evidence in the case, and finding that: (1) SBS was sufficiently mature and objected to return, (2) the petition was filed more than one year after wrongful retention and SBS was well-settled in New York, and (3) whether return to Chile

would expose S.B.S. to a grave risk of harm was not established by clear and convincing evidence.  SPA62–96.

The district court's key findings included:

- S.B.S. is precocious and articulate, forcefully expressing his views with consistency.  SPA42, SPA46, SPA58.  He is "mature and thoughtful for his age."  SPA59.

- S.B.S. was deeply discontent with his life in Chile and objected to return there.  SPA46, SPA53.

- S.B.S.'s objections to returning to Chile were "sincere, firmly held, and anchored in reason," and "amply 'particularized' and concrete."  SPA46, SPA53.

- S.B.S.'s objections to return were not the result of undue influence by Mr. Bowe; his "███████ and views about life in Chile were independent and long-standing" and "rooted in genuine perceptions about the downsides of his life there: █oneliness, sparse friends, an emotionally distant maternal relationship, a physically distant father, long stretches in the care of nannies, and uninspired schooling."  SPA55, SPA56.

- The date of wrongful retention was January 8 because Ms. Swett "repeatedly resisted Bowe's attempts to eliminate his duty to return the child by that date."  SPA68.

- Ms. Swett's "capitulation to Bowe's retention and non-return of S.B.S. after January 8, 2023 cannot be found to meet any possible standard of acquiescence or consent" in that it was not of her own volition.  SPA68, SPA69.

- S.B.S.'s life in New York was "stable, happy, purposeful," and "anchored in family, friends, community, activities, and education."  SPA42, SPA74–83.

- "Returning S.B.S. in the face of the [affirmative] defenses would punish Bowe for his missteps, at the price of disserving S.B.S" and "the equities overwhelmingly favor S.B.S.'s retention in New York."  SPA101.

12

Accordingly, the district court denied the petition for return.  On May 22, 2024, Ms. Swett filed her notice of appeal.

## STANDARD OF REVIEW

All factual findings, including credibility determinations, are reviewed under the "clearly erroneous standard," and that review is "significantly deferential" to the district court.  *Souratgar v. Lee*, 720 F.3d 96, 103 (2d Cir. 2013); *see also Norinder v. Fuentes*, 657 F.3d 526, 533 (7th Cir. 2011).  All findings of the district court are accepted unless there is a "definite and firm conviction that a mistake has been committed."  *Souratgar*, 720 F.3d at 103.

The interpretation of the Hague Convention and the application of the Hague Convention to the facts, is an issue of law, which is reviewed *de novo*.  *Blondin v. Dubois*, 238 F.3d 153, 158 (2d Cir. 2001); *Gitter v. Gitter*, 396 F.3d 124, 129 (2d Cir. 2005).

The ultimate decision to return—or not return—a child under the Hague Convention when one or more affirmative defenses is established, is reviewed for abuse of discretion.  *See Golan v. Saada*, 596 U.S. 666, 676 (2022); *Blondin*, 238 F.3d at 164–65.

## ARGUMENT

The district court found that two of Mr. Bowe's affirmative defenses under the Hague Convention (Article 13 and Article 12, respectively) had been proven at

13

trial—(1) S.B.S. is of an age and maturity that his views can be considered, and he objects to return, and (2) the Petition was filed more than a year after the date of the wrongful retention, and S.B.S. is well-settled in the United States. Ms. Swett challenges both findings on appeal, and also argues that the district court abused its discretion by *not* ordering S.B.S. returned to Chile despite having found that Mr. Bowe proved two affirmative defenses to return.

Ms. Swett's arguments are nothing more than an improper attempt to relitigate the evidence and the facts. The district court provided ample opportunity for the parties to present and argue the evidence, and then carefully weighed that evidence and the credibility of the witnesses in arriving at its factual findings and conclusions. Such fact findings are entitled to significant deference, and Ms. Swett has not presented any basis for concluding that there was clear error. Accordingly, the district court's careful and thorough decision should be affirmed.

## I. S.B.S.'S MATURITY AND OBJECTION TO RETURN ARE AMPLY SUPPORTED BY THE RECORD

### a. The Article 13 Maturity and Objection Defense

Under Article 13 of the Hague Convention, a "judicial or administrative authority may . . . refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of [his or her] views." Hague Convention, art. 13. A "child's views concerning the essential question of [his or her] return or retention

may be conclusive" provided the child has "attained an age and degree of maturity sufficient for its views to be taken into account." Perez-Vera Report at ¶ 30; s*ee Blondin v. Dubois*, 189 F.3d 240, 247 (2d Cir. 1999) (A child's wishes may be the sole reason that a court refuses to order the return of children to their habitual residence).

"Whether a child is mature enough to have [his or her] views considered is a factual finding that a district court must make in light of the specific circumstances of each case." *Haimdas v. Haimdas*, 720 F. Supp. 2d 183, 205 (E.D.N.Y. 2010), *aff'd* 401 F. App'x 567 (2d Cir. 2010). No particular age confers maturity on a child. *See Blondin*, 238 F.3d at 166 (declining to conclude that "under the Convention, as a matter of law, an eight-year-old is too young for her views to be taken into account . . . as this would read into the Convention an age limit that its own framers were unwilling to articulate as a general rule"). Children as young as eight have been deemed sufficiently mature to have their wishes considered by the court in addressing a Hague Convention petition. *See, e.g., de Silva v. Pitts*, 481 F.3d 1279, 1287 (10th Cir. 2007) (considering views of an eight-year-old child who was composed, calmly and readily answered questions, pointed to New Zealand on a globe, and indicated her understanding of the difference between truth and falsehood and of her obligation to tell the truth).

Determining whether a child is of sufficient maturity to consider his or her views is a fact-intensive process entirely dependent upon the specific circumstances of the case at issue. *See Custodio v. Samillan*, 842 F.3d 1084, 1089 (8th Cir. 2016); *Trott v. Trott*, 20-CV-1392, 2020 WL 4926336, at *6 (E.D.N.Y. Aug. 21, 2020).

### b. S.B.S.'s Maturity and Objection

Ms. Swett tries to cast the district court's decision on maturity and objection as "legal error," arguing that it is inconsistent with the legal principles of the Hague Convention and amounts to "custodial preference" and a "best interest" analysis. She ignores that the defense is plainly grounded on two central findings of fact: the maturity of the child and his views about return. The district court made detailed factual findings about S.B.S.'s extraordinary maturity for his age, and his genuine objection to return to Chile for specific reasons. SPA46, SPA53, SPA59. These fact findings are entitled to strong deference "in light of the factfinder's unique ability to assess the witness." *Adamis v. Lampropoulou*, 659 F. App'x 11, 12 (2d Cir. 2016) (quoting *Ortega v. Duncan*, 333 F.3d 102, 107 (2d Cir. 2003)); *see also Hernandez v. Cardoso*, 844 F.3d 692, 695 (7th Cir. 2016); *Valenzuela v. Michel*, 736 F.3d 1173, 1176 (9th Cir. 2013).

On the issue of maturity, there is no serious dispute that S.B.S. is sufficiently mature. Ms. Swett herself conceded that S.B.S. is mature, highly intelligent, and articulate. SPA61 ("everyone has been very surprised by his maturity."). Every fact

witness that testified echoed these sentiments. *See, e.g.*, JA438 (Daniels); JA481–JA482 (Bowe-Gutman); JA456 (Lyons); JA857–JA858 (Dr. Attie). During his own testimony, S.B.S. was able to articulate the complexity of his feelings and his nuanced reasons for not wanting to return to Chile. *See* JA1045:4; JA62–JA66; JA1046:15-21. The district court found that S.B.S. "conveyed that he appreciated the solemnity of the occasion, the need for care, and the imperative of telling the truth." SPA58. It found his reasoning "in the main, sensible, well-analyzed, and grounded in experience" and that he was an "astute and observant child who has come to his views based on reflection." SPA58. There is nothing improper or clearly erroneous about the district court's assessment of S.B.S.'s maturity. *See, e.g., Avendano v. Balza*, 442 F. Supp. 3d 417, 430 (D. Mass. 2020) (eleven-year-old child found to be mature where he could acknowledge some positive things about his life prior to removal but explain why he would rather stay in the United States; his concerns about return were rooted in his own experiences in the country of habitual residence).

As to S.B.S.'s view on Chile, the evidence reflects a consistent and very strong desire to stay in the United States and objection to return to Chile. *See, e.g., Tann v. Bennett*, 648 F. App'x 146, 149 (2d Cir. 2016) (finding that a twelve-year-old child not only wished to remain in the United States but objected to return to Northern Ireland). S.B.S. expressed his objection to living in Chile both before and after he

17

left in late 2022.  *See* JA3344.  He repeatedly shared his strong views with Ms. Swett directly.  *See, e.g.*, JA3039 ("[I]n Chile . . . it's hard for me to be at school.  Every, every day I go home, and I'm alone, Mom.  I'm not with you . . . ██████████ . . . I can't go back there, Mom."); JA3044 ("it feels like a prison"); JA3092 ██████ ██████████████████ School was bad.  I barely had any friends.  I wasn't practicing any sports or seeing any friends.  I'd stay inside the apartment all day.  I decided that I couldn't keep living like that.").

S.B.S. also shared his views about Chile with multiple witnesses.  *See, e.g.*, JA184 (Bowe: "He was indicating he really wanted to stay.  He didn't want to go back."); JA416 (Trauman); JA427 (Daniels); JA469 (Bowe-Gutman: "My life in Chile is hell."); JA512 (Marisa Bowe); JA827 (Dr. Attie); JA1268–JA1269 (Dr. Favaro).  And S.B.S. addressed the point directly through his counsel in a written submission to the district court, *see* JA62 ("In Chile, S.B.S. says he was lonely and ████████████ S.B.S. felt like he was a seedling that wanted to grow, but there was a cup over him, keeping him in place and preventing him from seeing sunlight."), and in his testimony at trial, *see* JA1001 ("I'm not happy there and I thought it was clear that I was unhappy while I was in Chile"); JA1046 ("I don't like my life in Chile.").

Ms. Swett's argument that S.B.S. merely had a "preference" for the United States over Chile, or a "custodial preference" for Mr. Bowe, rather than an "objection" to Chile, is belied by the record.  Ms. Swett's attempt to convert S.B.S.'s

18

statement that he will comply with the court's decision as a lack of objection to return is a non sequitur. Respect for the court's authority is not mutually exclusive with a strong objection to return. *cf. In re D.A.*, No. 14-CV-5836, 2015 WL 2344079, at *5 (E.D.N.Y. May 14, 2015) (the court asked how the child would feel if returned to Greece, and he responded "I really wouldn't want to go, but if you decide, I would be very angry and I would be sad because I would, I would be going to a place that I, I dont want to go. Like, it's challenging and there's nothing for me there"), *aff'd sub nom., Adamis v. Lampropoulou*, 659 F. App'x 11 (2d Cir. 2016). That S.B.S. also prefers to live with his father does not diminish his strong, reasoned objections to returning to Chile. None of the cases cited by Ms. Swett stand for the proposition that a child may not express any custodial preference in expressing their objections. *See* App Br. at 27 (citing *Hirst v. Tiberghien*, 947 F. Supp. 2d 578, 598 (D.S.C. 2013) (maturity determination was not based on objections to parental custody and the court specifically stated that it "d[id] not wish to discount the children's desire to remain . . . with their father."); *Hazbun Escaf v. Rodriquez*, 200 F. Supp. 2d 603, 615 (E.D. Va. 2002) (court determined the child's opinion should not be considered because the child only asserted a preference for the United States and not an objection to anything about Colombia); *Haimdas*, 720 F. Supp. 2d at 208 (the child's views were not considered because he saw the choice as only custodial, he did not express any objection to the country of residence)); *compare with*

*Custodio*, 842 F.3d at 1090 ("The propriety of considering evidence relevant to custody in a proceeding under the Hague Convention depends on the nature of the exception to return and the specific facts of the case").

The district court had ample basis for concluding that S.B.S. had genuine objections to return to Chile, including social isolation, a chaotic school environment, and difficulties having his needs met at home. *See, e.g., Castillo v. Castillo,* 597 F. Supp. 2d 432, 441 (D. Del. 2009) (particularized objections included, "pointing out that, in Colombia, she received little help with homework, performed poorly in school . . . was often unable to play outside due to safety concerns, spent much of her time at home alone, and had few friends."); *see also In re D.A.*, 2015 WL 2344079, at *6 (12-year-old child wanted to remain in the United States for superior educational opportunities, extracurricular activities, friendships, and connection with family); *Matovski v. Matovski*, No. 06-CV-4259, 2007 WL 2600862, at *14–15 (S.D.N.Y. Aug. 31, 2007) (holding that 12- and 11-year-old children sufficiently objected to return where they testified that they had more family and friends in the United States, enjoyed a more stable life, and were concerned about uncertainties that they would face in home country).   The district court correctly found that S.B.S.'s objections to returning to Chile were "sincere, firmly held, and anchored in reason," and "amply 'particularized' and concrete" and that S.B.S.'s " ███████ and views about life in Chile were independent and long-standing"

20

and "rooted in genuine perceptions about the downsides of his life there." SPA46, SPA53, SPA55, SPA56.

### c. The District Court Correctly Rejected Ms. Swett's "Parental Alienation" Theory

Ms. Swett's attempt to override S.B.S.'s stated objections by arguing they are the result of "parental alienation" was properly rejected at trial and there is no basis to relitigate that factual issue on appeal. *See* SPA55, SPA87. The mere fact that S.B.S. has been exposed to his parents' opinions does not mean he cannot have his own views. *See In re D.T.J.*, 956 F. Supp. 2d 523, 542 (S.D.N.Y. 2013) (finding a child capable of his own decision after reasoned consideration despite having been exposed to views of parent); *see also Poretti v. Baez*, No. 19-CV-1955, 2019 WL 5587151, at *8 (E.D.N.Y. Oct. 30, 2019) (When a child testifies there is "always an issue . . . as to whether the testimony has been unduly influenced by [the] parents . . . Nevertheless, this risk does not suggest the Court must turn its back on a child's sincere and thoughtful wishes."). The district court extensively documented S.B.S.'s constant complaints to the adults in S.B.S.'s life, *see supra* 15–16, as well as throughout S.B.S.'s skype exchanges with his father. *See* SPA46–47, SPA87 (citing exchanges between Bowe and S.B.S.: Skype exchange on June 12: Bowe: "[S]undays are always hard there." S.B.S.: "Monday's, Tuesday's Wednesday's, Thursday's Friday's Saturday's too."; S.B.S.: "anyway i got nobody to talk to and nothing to do."; S.B.S.: "fucking life here sucks donkey dick with rancid cheese.")

21

Notably, Ms. Swett continues to blame Mr. Bowe for her strained relationship with S.B.S., without any acknowledgement about the impact her own actions have had on her son, including his frustration with her continued attempt to whitewash his experience in Chile and deny his views. *See* SPA49–50 ("Really, Mom? A house 2 minutes away from school will resolve things, the fact that I've had many bad experiences in Chile and that I don't want to come back? Seriously?"); ("I thought you'd be like 'Oh, this is going to be hard, but I'm going to do this for my son, for him to have a good future, ███████████████████████████████ ("I've been trying to tell you this for one year"); ("you don't listen to me."). At trial, the district court rejected Ms. Swett's argument that S.B.S.'s feelings were not his own because it is "deprecating S.B.S.'s capacity for independent thought." SPA55.

Finally, Ms. Swett argues that the district court improperly considered S.B.S.'s pre-petition feelings and failed to consider whether S.B.S.'s views *at the time of trial* were a product of undue influence. App Br. at 34. This is willfully inaccurate. During trial, the district court interviewed S.B.S. in camera for several hours, SPA84, exploring his views in depth. *See* JA935–JA1066. After considering S.B.S.'s views both before and after the filing of the Petition and assessing the impact of Mr. Bowe's statements on S.B.S.'s views, it found that S.B.S.'s complaints predated the inappropriate communications with Mr. Bowe, and that "the durability, consistency, and clarity of S.B.S.'s objections to returning to Chile underscore that

22

these are sincere, firmly held, and anchored in reason." SPA46. Indeed, "S.B.S.'s assembled communications over time to a diverse array of persons—Chileans and Americans; kin and strangers; teachers and therapists; a lawyer and a judge—leave the Court with zero doubt about the durability and strength of his objection to return to Chile." SPA53.

The district court's finding that S.B.S.'s objections are sincerely held, and its rejections of Ms. Swett's alternative explanation, is entitled to strong deference. *See e.g. Lomanto v. Aduke Agblusi*, No. 23-993, 2024 WL 3342415, at *3 (2d Cir. July 9, 2024); *Diaz-Alarcon v. Flandez-Marcel*, 944 F.3d 303, 312 (1st Cir. 2019) (a fact finder's "choice between competing, but rational, views cannot be clearly erroneous").

### d. Ms. Swett's Attempt to Create a Question of Law Fails

Ms. Swett argues that the purpose of the Convention is to deter international child abduction, and that the district court ignored this purpose when it stated "[t]his case is about S.B.S. . . . I'm not sending a message to the next set of parents." App Br. at 24 (citing JA1376.23-24). Ms. Swett's interpretation verges on fancy, given the Convention's stated intent of serving multiple goals, as reflected in the existence of Article 13 of the treaty, which is designed to ensure that children's safety and well-being is paramount. *See Lomanto v. Abgelusi*, No. 22-CV-7349, 2023 WL 4118124, at *18 (S.D.N.Y. June 22, 2023) (the Convention has "an interest in the

welfare of the children and their interests in remaining settled."); *see also Golan*, 596 U.S. at 684. Moreover, each case is unique and necessarily fact intensive. *See Custodio*, 842 F.3d at 1089 ("the district court's finding that a child has or has not objected is a 'fact-intensive' determination that is based in part on the court's personal observations of the child"). The district court correctly held that determination of maturity of the child "may but need not be affected by the wrongful actions of his or her parent." *Id.* at 1092; *see Lomanto*, 2024 WL 3342415, at *3.

Additionally, Ms. Swett argues that the court "conflated the Article 13 child objections exception with a best interest analysis." App Br. at 25. She bases this argument on the district court's comment during trial that "all of the defenses, although they don't say best interest of the child, in one way or the other are about the child" and its question to Ms. Swett's expert "Best interest of the child are not the issue here. But if you were the tsar of the world here and your decision is unappealable . . . Where is the child's best interest?" JA1375:23-25 & JA1378:25-1379:6. These two statements out of a 9-day trial, including an explicit acknowledgement that the standard is not "best interest," do not transform the court's reasoned fact findings on the affirmative defense into a custody determination. Moreover, it is obviously true that all of the issues under the Convention are ultimately designed to protect children and to serve their interests,

even if the evaluation of the Petition is not a "best interests" determination. *See Lomanto*, 2023 WL 4118124, at *18.

## II. THE PETITION WAS FILED MORE THAN ONE YEAR AFTER THE DATE OF RETENTION AND THE DISTRICT COURT CORRECTLY FOUND THAT S.B.S. IS WELL-SETTLED

### A. The Article 12 One-Year and Settled Defense

Under Article 12 of the Hague Convention, if "(1) one year has elapsed between the date of wrongful removal and the date proceedings commence; and (2) the child is found to be now settled in its new environment," the district court may deny the petition for return. *Lozano v. Alvarez*, 697 F.3d 41, 51 (2d Cir. 2012); Hague Convention, art. 12.

The one-year period for considering whether a child is "well settled" begins from the date of wrongful retention or removal. *See id.* Wrongful retention begins on the date "on which the child ought to have been returned to its custodians or on which the holder of the right of custody refused to agree to an extension of the child's stay." *Marks v. Hochhauser*, 876 F.3d 416, 422 (2d Cir. 2017). Retention is a singular act that "occurs on a fixed date." *Id.*; *see also Taveras v. Morales*, 22 F. Supp. 3d 219, 233 (S.D.N.Y. 2014).

In determining whether a child is settled, courts consider: (1) the age of the child; (2) the stability of the child's residence in the new environment; (3) whether the child attends school or day care consistently; (4) whether the child attends church

25

or participates in other community or extracurricular school activities regularly; (5) the respondent's employment and financial stability; (6) whether the child has friends and relatives in the new area; and (7) the immigration status of the child and the respondent. *See Lozano*, 697 F.3d at 56.

## B. The District Court Correctly Found The Date Of Wrongful Retention To Be January 8, 2023

Despite being in regular contact with S.B.S. while he was in the United States, despite knowing where S.B.S. was living in New York, and despite consulting a U.S. lawyer specialized in the Hague Convention in fall 2023, Ms. Swett inexplicably did not file a petition for return until February 23, 2024. JA659, JA795–JA796. The district court correctly found that Ms. Swett waited over one year from the date of "wrongful retention," January 8, 2023. SPA62–73.

The record amply supports the district court's factual finding that January 8, 2023 is the date of wrongful retention. January 8, 2023 was the end date on her notarized travel authorization, *see* JA2492, Ms. Swett filed a police report on January 10 when S.B.S. did not return on the 8th, JA2513–JA2516, Ms. Swett admitted that she never consented to S.B.S. staying in the United States past January 8, JA769–JA707, and she made numerous statements in January and February 2023

accusing Mr. Bowe of kidnapping because S.B.S. was not returned on January 8, JA712, JA733, JA773, JA798, JA2569.[1]

Ms. Swett nonetheless argued at trial—and argues now on appeal—that she extended the date of return to February 26. She asserts that "[b]oth parties acknowledged there was an agreement or understanding that S.B.S. was to return to Chile on or around February 26, 2023," App. Br. at 45, but cites no evidence because there is none. The district court correctly rejected Ms. Swett's "extension" theory, *see* SPA68–70, as inconsistent with the totality of the evidence, and concluded that January 8, 2023, is the date of wrongful retention.

Perhaps because she cannot establish any clear error in the district court's factual findings, Ms. Swett argues that the district court utilized the wrong legal standards—*i.e.*, that (1) the district court created a new "begrudgingly acceded" standard that improperly considered the "relative enthusiasm" behind Ms. Swett's claimed consent to an extension of her travel authorization , and (2) the district court

---

[1] For example, on January 5, in a remote meeting, Ms. Swett demanded that respondent return S.B.S. on January 8, promising that if he did so and consented to a mediation in March, she would sign another travel permit. *See* SPA68. The same day, she emailed Mr. Bowe reiterating, "You left Chile KNOWING you had a 'Christmas trip' authorization with a return date of January 8." *Id*. The next day, on January 6, 2023, Ms. Swett reiterated that S.B.S. must return on January 8, 2023, stating in an email, "I authorized you to take S.B.S. to spend the holidays in New York on the understanding that . . . that you will bring him back to his home on January 8, a commitment you don't want to comply with." SPA31 (cleaned up). And on January 8, Ms. Swett unsuccessfully begged Mr. Bowe to bring S.B.S. back to Chile. SPA69.

incorrectly held that a left behind parent cannot unilaterally extend her consent for the child to remain abroad. *Id.* Both arguments distort the record and misstate the law.

*First*, Ms. Swett's argument that the District Court invented a new "begrudgingly acceded" standard is incorrect because it long has been the standard to consider the left-behind parent's subjective intent, not merely their outward actions. *See Lomanto*, 2023 WL 4118124, at *12–13 (observing that "acquiescence is a question of the actual subjective intention of the wronged parent, not of the outside world's perception of his intentions"); *see also Baxter v. Baxter*, 423 F.3d 363, 371 (3rd Cir. 2005) (observing that the consent and acquiescence defenses "are similar . . . in their focus on the petitioner's subjective intent"). Contrary to Ms. Swett's characterization, the district court did not "examine the relative enthusiasm" of Ms. Swett's consent. *See* App Br. at 46. Instead, it properly analyzed whether there was consent at all, considering the full context and circumstances of the situation. Ms. Swett "believed that Mr. Bowe was going to keep S.B.S. in the United States until the end of February no matter what," SPA69–70; JA929–JA930, and "she did not know that [respondent] would return SB.S." at the end of February, SPA70; JA716, but she "preferred to believe" he would "so S.B.S. never finds out that he was kidnapped." SPA33; JA773; *see also* JA798. With that context, the district court determined that Ms. Swett "at most begrudgingly acceded to the

28

inevitable: that Bowe would keep S.B.S. in New York until late February." SPA69. In other words, Ms. Swett did not consent to an extension; she merely accepted that she had no way to get S.B.S. back to Chile before the end of February. When viewed against the testimony and evidence that Ms. Swett conveniently leaves out of her recitation of the facts—including the critical fact of the police report that she filed on January 10—Ms. Swett's alternative story does not establish that she gave permission for S.B.S. to remain outside of Chile with Mr. Bowe. *See Lomanto*, 2023 WL 4118124, at *12 (relying on police report in finding that petitioner withdrew consent). This curtailment of her custody rights is the very definition of wrongful retention. *See Marks*, 876 F.3d at 422.

*Second*, contrary to Ms. Swett's assertion, the district court never held that a parent could not unilaterally consent to an extension (and Ms. Swett provides no citation for her assertion). Instead, after establishing that Ms. Swett was steadfast in maintaining her right to S.B.S.'s return on January 8, and Mr. Bowe's refusal to commit to any return, the Court rejected the notion that two emails after January 8 established an agreement between the parents that S.B.S. could be returned on February 26. SPA70. Ms. Swett's assertion that the district found that Mr. Bowe "promised to return S.B.S. on February 26, 2023," App Br. at 46, is false. The district court instead found that when Ms. Swett emailed that S.B.S. needed to arrive

on February 26, Mr. Bowe emailed a "noncommittal" and "intentionally vague" response that did not commit to returning him by that date. SPA34.[2]

Finally, Ms. Swett's claim that she was not aware of Mr. Bowe's ultimate plan is irrelevant because it does not undermine the fact that her custodial rights were abridged on January 8. *Marks*, 876 F.3d at 422 (all that is required to establish unlawful retention is keeping a child in contravention of the left-behind parent's custodial rights); *see also, e.g., Tereshchenko v. Karimi*, 102 F.4th 111 (2d Cir. 2024) (finding that keeping children in United States was "wrongful within the meaning of Article 3 because it breached [the father's] custody rights"). Ms. Swett's refusal to grant consent as of January 8 was unequivocal, and when Mr. Bowe kept S.B.S. past that date, he did so in violation of her custodial rights. Ms. Swett's lack of knowledge regarding what would occur after January 8, does not change the fact that Ms. Swett's custodial rights were violated on that date.

Ms. Swett's reliance on *Falk v. Sinclair*, 692 F. Supp. 2d 147 (D. Me. 2010), is misplaced. *Falk* supports the uncontroversial principle that a retention occurs on the date that the left-behind parent required the child to be returned but was not. *See id*. at 163–64. The district court's determination here is consistent with this principle because the district court looked to the date that Ms. Swett required that S.B.S. be

---

[2] The assertion that Mr. Bowe's agreement to return S.B.S. constitutes consideration for Ms. Swett's permission to extend (App. Br. at 46), therefore, makes no sense. Ms. Swett cannot assume the fact that she is trying to prove.

returned. *Falk* says nothing about what is necessary to establish an extension of the agreed upon return date, and tellingly, Ms. Swett has not identified a single case that undermines the district court's decision.

Ms. Swett fails to demonstrate clear error in the district court's finding that S.B.S. was wrongfully retained on January 8, 2023. There is no indication the district court used the wrong legal standard. It made a factual determination that Ms. Swett finds disagreeable, and she strains unsuccessfully to paint it as a legal error.

### C. The District Court Correctly Found That S.B.S. Is Settled In New York

The district court considered the robust record in this case and determined that "together, Bowe has easily established this defense by a preponderance of the evidence." SPA84. Indeed, the district court had "a firm impression that S.B.S. is *thriving and well-settled* in the United States." SPA84 (emphasis added citing *Poretti*, 2019 WL 5587151, at *6).

Ms. Swett challenges the district court's factual finding of well-settled by re-arguing her bald assertion at trial that S.B.S. did not adjust well to his life in New York. Br. at 49–50. She then separately accuses the district court of engaging in a "best interests analysis" by considering S.B.S.'s relative sadness in New York and Chile. *Id.* Both arguments mischaracterize the evidence and the district court's analysis.

31

At trial, there was no dispute that S.B.S. had periodic bouts of sadness during the summer of 2023, but that is not dispositive of whether he is well-settled in New York because courts look to the totality of the circumstances. *See Lozano*, 697 F.3d at 56 (affirming district court's consideration of totality of the circumstances and holdings that "courts deciding whether a child is settled must simultaneously balance many factors"); *see also da Silva v. da Aredes*, 953 F.3d 67, 75 (1st Cir. 2020) (considering totality of the circumstances); *Alcala v. Hernandez*, 826 F.3d 161, 170–71 (4th Cir. 2016) (adopting totality of the circumstances approach and collecting appellate court cases doing the same).

It was appropriate for the district court to consider S.B.S.'s relative sadness in New York versus Chile in the context of assessing *Ms. Swett's argument* that "S.B.S. is not well-settled because the record indicates that he deeply misses Swett and has complex feelings regarding his separation from her." SPA76. The district court ultimately concluded, based in part on Dr. Attie's testimony, that S.B.S.'s bouts of sadness stemmed from his mother's inexplicable refusal to visit him in New York throughout the entirety of 2023, despite his repeated requests for her to do so. *See, e.g.,* JA896. Indeed, Ms. Swett herself conceded that S.B.S.'s "sobbing" was connected to her absence, not his life in New York. *See* JA1413–JA1414. The district court rejected Ms. Swett's argument because S.B.S. missing his mother did

not "make him other than settled in the United States, any more than his missing Bowe ma[kes] him other than settled in Chile." SPA77.

S.B.S.'s brief period of sadness does not outweigh the overwhelming evidence, detailed over nearly 10 pages of the district court's opinion, that S.B.S. is "thriving" in New York. *See* SPA75–84. S.B.S.'s stable home environment with a stable parent, his success at school, his close family and friendships, his familiarity with New York having spent considerable time in the city over the years, and his overwhelming desire to live in the United States despite missing his mother, all support the district court's finding of well-settled.

Ms. Swett's reliance on *da Silva v. da Aredes* for the proposition that mental health issues can demonstrate lack of settlement, is misplaced. *See* App Br. at 49–50 (citing 953 F.3d 67 (1st Cir. 2020)). In *da Silva*, the children's mental health issues were not considered in isolation, as Ms. Swett suggests. *See da Silva*, 953 F.3d at 75; *see also See* Nov. 13, 2019 Tr. at 47:12–18, *da Silva v. da Aredes*, No. 18-CV-12353 (D. Mass.) (focusing on the child's education issues, noting that "[t]he level of tardies and absences I think are extreme for a child that young" and it was an indication that the child was not well settled); Nov. 6, 2019 Tr. at 11:18–12:6, , *da Silva v. da Aredes*, No. 18-CV-12353 (D. Mass.) (finding that risk of deportation undermined a finding of settlement). Rather, the *da Silva* court considered the totality of the circumstances, which is precisely what the district court did here. Ms.

Swett points only to a brief period of sadness stemming from missing his mother—and nothing else—as evidence that S.B.S. is not settled, but the district court's finding was correct that the other evidence of settlement overwhelmingly supported its finding.

In sum, Ms. Swett has presented no clear error of fact or error of law requiring reversal of the district court's decision that S.B.S. was retained in contravention of her custodial rights on January 8, 2023, and that S.B.S. is "thriving" in New York. The district court's decision should be affirmed.

## III. THE DISTRICT COURT'S REFUSAL TO RETURN S.B.S. TO CHILE WAS NOT AN ABUSE OF DISCRETION

Ms. Swett's final argument that the district court abused its discretion in not returning S.B.S. to Chile, notwithstanding the affirmative defenses that were proven at trial, is baseless. District courts maintain the ability to repatriate children notwithstanding the applicability of affirmative defenses, but the entire point of the defenses is to provide countervailing considerations that justify denial of the petition for return. *See Blondin*, 189 F.3d at 246 n.4 (remanding to district court for consideration of remedies to allow return to the country of habitual residence as well as protection from harm); *Blondin v. Dubois*, 78 F. Supp. 2d 283, 299 (S.D.N.Y. 2000) (denying the petition after so considering). Here, in the course of a two-week trial, the district court found that two affirmative defenses had been established, and Ms. Swett's disagreement with the decision does not mean there was an error of law

34

or an abuse of discretion. Ms. Swett does not come anywhere near the high standard for demonstrating an abuse of discretion.

This Court's recent decision in *Lomanto*, is instructive. There, the district court denied repatriation based on the children's interests in remaining settled in their new community in New York and one of the children's objections to return to Spain, despite allegations of wrongful removal and retention. This Court held that it was not an abuse of discretion to refuse to return the children on this basis. *See* 2024 WL 3342415, at *17–18 (2d Cir. 2024). Here, the district court similarly considered each purpose of the Convention in its lengthy opinion, as well as the conflicting interests of the parties, and concluded that it would not order return to Chile. SPA96–101. As stated above, the district court's credibility determinations are given "particularly strong deference," *Adamis*, 659 F. Appx. at 12.

Ms. Swett identified various purposes of the Convention—including the prompt return of wrongfully removed or retained children, dissuading forum shopping, and deterring future parents from wrongful removal or retention—that she argues the district court ignored. *See* App Br. at 50–51. But she leaves out the primary purpose of the Convention: the safety and wellbeing of the child. *See Golan*, 596 U.S. at 684 ("[T]he Convention sets as a primary goal the safety of the child."); *Lomanto*, 2023 WL 4118124, at *18. In the end, Ms. Swett's argument amounts to the claim that the district court should have assigned greater weight to

the interests that weigh in favor of return, such as deterring retention in other cases and punishing Mr. Bowe's behavior, rather than to the interests that the district court found amply supported Mr. Bowe's affirmative defenses in this case. "Such relative weighting of interests by the district court . . . is not for this court to second-guess, and especially not on an abuse of discretion analysis." *da Costa v. de Lima*, 94 F.4th 174, 186 (1st Cir. 2024) (holding that "equity could not be served by ordering the child's departure from a supportive environment and the return to a less supportive one simply as punishment for the removing parent's alleged malfeasance."). "[T]he record reflects the district court's awareness of its responsibility to weigh the relevant factors and perform [the applicable] balancing test," *see United States v. De La Cruz,* 902 F.2d 121, 123 n.1 (1st Cir.1990), and it did not abuse its discretion in giving greater weight to the interests of the child. *See Custodio*, 842 F.3d at 1089 (holding that district court acted within its discretion in denying return of children, even though doing so would effectively reward mother for wrongful removal and retention of children).

## **CONCLUSION**

For the foregoing reasons, the decision and order of the district court should be affirmed.

Dated: August 6, 2024

Respectfully submitted,

*/s/ Karen R. King*
Karen R. King
  *Counsel of Record*
Kathleen E. Cassidy
Jordan L. Weatherwax
Megan Knepka
MORVILLO ABRAMOWITZ
  GRAND IASON & ANELLO P.C.
565 Fifth Avenue
New York, NY 10017
(212) 856-9000
kking@maglaw.com

*Counsel for Respondent-Appellee John Bowe*

37

**<u>Certificate of Compliance with Typeface and Word-Count Limitations</u>**

I, Karen R. King, counsel for Respondent-Appellee and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32.1(a)(4)(A), that the attached Brief of Respondent-Appellant Yasamin Karimi is proportionately spaced, has a typeface of 14 points or more, and contains fewer than 14,000 words.


Date:  August 6, 2024

/s/ Karen R. King